IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**FREDDIE CANDELARIA-FONTANEZ,** *et al.*,
    Plaintiffs,

v.

**FEDERAL BUREAU OF PRISONS,** *et al.*,
    Defendants.

Civil No. 20-cv-1085 (BJM)

**OPINION AND ORDER**

Plaintiffs Freddie Candelaria-Fontanez ("Candelaria-Fontanez"), Carmen Monserrate ("Monserrate"), and the conjugal partnership Candelaria-Monserrate ("the conjugal partnership") (collectively "Plaintiffs") sued the Federal Bureau of Prisons ("FBP"), the U.S. Department of Justice ("DOJ"), and several unnamed defendants (collectively "Defendants") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. Docket No. ("Dkt.") 1. The United States of America ("United States") is the proper defendant in this case. *See Nieves-Romero v. United States*, 715 F.3d 375, 378 n.2 (1st Cir. 2013). This court has jurisdiction when the United States is a defendant. 28 U.S.C. § 1346(b)(1).

Plaintiffs seek damages under Article 1802 of the Puerto Rico Civil Code for Candelaria-Fontanez's slip and fall accident at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico. Dkt. 1. Responding on behalf of the named defendants, the United States moved for summary judgment, Dkt. 36, and submitted a memorandum supporting its motion. Dkt. 38. Plaintiffs opposed, Dkt. 41, and the United States replied. Dkt. 44. Both parties filed proposed statements of uncontested material facts ("SUMFs") and accompanying exhibits. Dkts. 37, 41. This case is before me on consent of the parties. Dkt. 18.

For the reasons set forth below, the United States's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions and presented in the light most favorable to the nonmoving party. *See, e.g.*, *In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 29 (1st Cir. 2016). I have omitted portions of the proposed facts that state conclusions of law or that I deem irrelevant, but I otherwise resolve any conflicts between the parties' versions of events in favor of Plaintiffs.

Candelaria-Fontanez and Monserrate's son is an inmate at the MDC in Guaynabo, Puerto Rico. Dkt. 37 ¶ 1. He has been housed there since 2014, except for the period immediately following Hurricane Maria when inmates were moved off the island due to the MDC's lack of water and electricity. *Id.* ¶¶ 1, 4. On February 15, 2018, Candelaria-Fontanez, Monserrate, and their adult grandson visited the MDC to see the couple's son. Dkt. 37 ¶ 1; Dkt. 41-4 at 3 ll. 3–12. Prior this visit, Candelaria-Fontanez had seen his son at the MDC between ten and twenty times and had passed through the facility's parking lot during at least some of these visits. Dkt. 37 ¶¶ 2–3; Dkt. 41-1 ¶ 1. On February 15, Candelaria-Fontanez arrived at the MDC before 5:00 p.m. and left around 8:30 p.m. Dkt. 37 ¶ 6. Though the MDC had electricity inside, the parking lot lacked illumination and was very dark. *Id.* ¶ 5. After the visit, Candelaria-Fontanez was in a rush to take his grandson home. *Id.* ¶ 7; Dkt. 41-1 at 1 ¶ 2.

As Candelaria-Fontanez, Monserrate, and their grandson left the MDC on February 15, drizzling rain began to fall. Dkts. 37 ¶ 8; 41-1 ¶ 3. Candelaria-Fontanez pressed the beeper for his car to find it in the parking lot. Dkts. 37 ¶ 8; 41-1 ¶ 3. Once the car lights came on, he started either running or briskly walking toward it. Dkts. 37 ¶ 8; 41-1 ¶ 3. At that time, he tripped over a handicap ramp that had faded paint and was covered in soil. Dkts. 37 ¶ 8; 41-1 at 4 ¶ 10. He fell toward his right side, hitting his shoulder, elbow, and hand. Dkts. 37 ¶ 8; 41-1 at 2 ¶ 4, at 3 ¶¶ 2–3. The area

was wet from the rain and Candelaria-Fontanez's pants got wet when he fell. Dkts. 37 ¶ 8; 41-1 at ¶ 4. Monserrate did not see her husband fall because it was dark, but testified she heard someone yell, "he fell. Help him." Dkt. 41-1 at 3 ¶ 9.

Candelaria-Fontanez had seen the ramp before because he had crossed through the same area on previous visits to see his son. Dkts. 37 ¶ 14; 41-1 ¶ 5. However, Monserrate had never seen the parking lot as dark as it was on February 15. *Id.* at 4 ¶ 11. At the time of his fall, Candelaria-Fontanez was looking towards his vehicle's flashing lights. Dkts. 37 ¶ 14; 41-1 ¶ 5. After he fell, he got into his car and left the MDC to take his grandson home. Dkts. 37 ¶ 15; 41-1 ¶ 5. He did not talk to any MDC employee and the facility's February 15, 2018 Lieutenant Log documents no incidents. Dkts. 37 ¶¶ 16, 24; 41-1 ¶¶ 5, 10. However, a memorandum prepared by Karl W. Nickels, a now-retired safety manager at MDC, states that Candelaria-Fontanez appeared at the facility on February 20, 2018 to report that he had suffered a fall. Dkts. 37 ¶ 29; 41-1 at 2 ¶ 12.

Institutional Duty Officer Martin Lopez prepared a Duty Officer Report for February 13 through February 20, 2018. Dkts. 37 ¶ 25; 41-1 at 2 ¶ 10. This report stated the areas toured were found to be in good condition. Dkt. 37-6 ¶ 2. Further, it noted no fire hazards, safety hazards, or environmental health issues. *Id.* ¶ 8. Lastly, it stated there were no emergency or unusual situations that week. *Id.* ¶ 11.

On January 28, 2020, Candelaria-Fontanez submitted a claim to the FBP requesting $100,000 for injuries resulting from his February 15, 2018 fall. Dkts. 37 ¶¶ 17–18; 41-1 at 2 ¶ 6. This document stated he pressed his car's beeper to find it in the dark area and began running towards it once its lights illuminated. Dkt. 37-2. At this point, his statement says he got entangled in one of the handicap ramps in a dark area and fell. *Id.*; Dkts. 37 ¶ 20; 41-1 at 2 ¶ 8. Presumably, Candelaria-Fontanez's claim was denied and this action followed. Dkt. 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). And the court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## DISCUSSION

The United States moved for summary judgment arguing this court lacked jurisdiction over Monserrate and the conjugal partnership's claims because both failed to exhaust their administrative remedies before filing suit. Dkt. 38 at 1–2. Further, it argued Candelaria-Fontanez could not prove negligence. *Id.* at 2–4. Plaintiffs did not address the argument that Monserrate and

the conjugal partnership failed to exhaust their administrative remedies. However, they argued the FBP breached its duty of care, which caused Candelaria-Fontanez's fall. Dkt. 41-2 at 6–8. I address the parties' arguments below.

## I.      Monserrate and the Conjugal Partnership's Claims

The FTCA waives the sovereign immunity of the United States to suits in tort. 28 U.S.C. § 2674. However, unlike in suits against private individuals, the FTCA created an administrative procedure that claimants must follow and exhaust. *See* 28 U.S.C. § 2675 ("An action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied."). This procedure allows the agency involved to receive a claim, investigate, and perhaps settle the dispute before a suit is filed. *Id.* "Failure to timely file an administrative claim with the appropriate federal agency results in dismissal of the plaintiff's claim, since the filing of an administrative claim is a non-waivable jurisdictional requirement." *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 18 (1st Cir. 1993) (collecting cases).

Candelaria-Fontanez submitted a claim form on his behalf and provided a statement. Dkts. 37-1, 37-2. Neither document presents a claim on behalf of Monserrate or the conjugal partnership. This court thus has subject matter jurisdiction of his claims under the FTCA. *See Santiago-Ramirez*, 984 F.2d at 20. However, a plaintiff's claim is limited to the information included in his administrative claim. *Id.* Thus, Candelaria-Fontanez may bring his claim, but his wife and the conjugal partnership cannot. *Id.* (dismissing spouse and conjugal partnership's claims because they were not included in the administrative complaint). Accordingly, the United States's motion for summary judgment regarding Monserrate and the conjugal partnership's claims is **GRANTED** and their claims are **DISMISSED with prejudice**.

### II.      Candelaria-Fontanez's Negligence Claim

As discussed, the FTCA constitutes a limited waiver of sovereign immunity allowing the United States "to be held liable for certain tortious acts or omissions." *Nieves-Romero*, 715 F.3d at 378. "The FTCA mandates that an inquiring court must look to 'the law of the place where the act or omission occurred' when making a liability determination." *Calderon-Ortega v. United States*, 753 F.3d 250, 252 (1st Cir. 2014) (quoting 28 U.S.C. § 1346(b)(1)). Accordingly, I turn to Puerto Rico law.

Article 1802 of the Puerto Rico Civil Code imposes liability on "[a] person who by an act or omission causes damage to another through fault or negligence." 31 L.P.R.A. § 5141. When Puerto Rico amended its Civil Code in 2020, Article 1802 became Article 1536. However, the pre-2020 Civil Code governs this case because it was in effect when Candelaria-Fontanez allegedly fell in 2018. *See Quiles v. United States*, 2021 WL 5762950, at *1 n.1 (D.P.R. Dec. 3, 2021).

"To succeed on a negligence-based tort claim, a plaintiff must establish four essential elements: '(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a causal connection between the damage and the tortious conduct.'" *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 547 (1st Cir. 2019) (quoting *Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)). "[L]iability will only arise if the damages complained of were reasonably foreseeable to the defendant." *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 322 (1st Cir. 1999).

Candelaria-Fontanez alleges the United States was negligent because the MDC's parking lot was poorly illuminated, the handicap ramp created an uneven floor, and the United States failed to warn him about the ramp. Dkt. 1 ¶¶ 9–10. The United States argues it is not liable for his fall because (1) no dangerous condition existed; (2) Candelaria-Fontanez was familiar with the parking

lot from prior visits; (3) he fell due to his own negligence; and (4) no one reported the fall on the day it happened, there were no witnesses, and no FBP employees saw anything unusual. Dkt. 38 at 4. Candelaria-Fontanez responds by reiterating his allegations. Dkt. 41-2 at 7. I address the parties' arguments below.

  A.  **Breach of Duty**

"In most negligence cases, a defendant's duty 'is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances.'" *Houston v. Frog's Rest., LLC*, 513 F. Supp. 3d 235, 240 (D.P.R. 2021) (citing *Situ v. O'Neill*, 124 F. Supp. 3d 34, 43 (D.P.R. 2015)). Where, as here, a plaintiff alleges his injury flowed from a dangerous condition on the defendant's premises, the plaintiff must show that a dangerous condition existed, that the defendant had actual or constructive knowledge of that condition, and that the condition was not known or apparent to the plaintiff. *Mas v. United States*, 784 F. Supp. 945, 948 (D.P.R. 1992), *aff'd*, 984 F.2d 527 (1st Cir. 1993) (citing *Goose v. Hilton Hotels International, Inc.*, 79 P.R.R. 494, 498 (1956)). Finally, a person or entity only breaches the duty of care by creating a reasonably foreseeable risk of harm. *Vazquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007).

  *i.*  ***Dangerous Conditions***

Candelaria-Fontanez and Monserrate's deposition testimony constitutes the only evidence as to the existence of the allegedly dangerous conditions (the dark parking lot, the handicap ramp with faded paint, and the soil covering that ramp). Aside from the soil, the United States does not contest Plaintiffs' characterization of the MDC's premises. Viewing the record in the light most favorable to Candelaria-Fontanez, I accept the deposition testimony as true for the purpose of opposing summary judgment.

The United States asserts the dark parking lot and the ramp did not constitute dangerous conditions. Dkt. 38 at 2. It argues that darkness "does not, without more, establish the presence of an unreasonably dangerous condition." Dkt. 44 (citing *Ayala Martínez v. Puerto Rico CVS Pharmacy, LLC.*, 2022 WL 1289356, *3–4 (D.P.R. Apr. 29, 2022) (emphasis omitted)). *Ayala Martínez* addressed cracks and uneven pavement, not darkness. *See* 2022 WL 1289356 ("The mere presence of an uneven crack or hole in a parking lot does not, without more, establish the presence of an *unreasonably* dangerous condition."). Setting aside that misrepresentation, Candelaria-Fontanez argues that the darkness, combined with the soil-covered ramp, constituted a dangerous condition. *Ayala Martínez* thus does not support the government's argument for summary judgment.

The government further argues Candelaria-Fontanez did not, and cannot, argue that the ramp constitutes a dangerous condition. Dkt. 44 at 4. It is true that Candelaria-Fontanez does not claim the ramp was a dangerous condition in and of itself. However, he argues the failure to properly maintain it, combined with the darkness in the parking lot, created a dangerous condition. Dkt. 41 at 7–8. A genuine issue of material fact exists if a reasonable jury could find for either party on the contested matter. *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003). On summary judgment, this court previously found that whether a wet ramp outside of a grocery store constituted a dangerous condition was a question for a jury. *Figueroa-Garcia v. United States*, 364 F. Supp. 2d 140, 144 (D.P.R. 2005). Similarly, a factfinder must decide whether an allegedly soil-covered handicap ramp with faded paint in a dark parking lot constitutes a dangerous condition. Thus, this question cannot be resolved on summary judgment.

### ii.     *Actual Knowledge*

Nothing in the record establishes the United States had actual knowledge of the allegedly dangerous conditions. It submitted an Inspection Checklist from a February 16, 2018 fire, safety, and sanitation inspection that found no corrective action needed at the MDC. Dkt. 37-5. Further, a February 21, 2018 Duty Officer Report found the toured areas of the facility were in good condition and there were no safety hazards. Dkt. 37-6 ¶¶ 2, 8. Thus, there is no evidence that the United States had actual knowledge of the allegedly dangerous conditions.

### iii.    *Constructive Knowledge*

Candelaria-Fontanez may still show the United States had constructive knowledge of these alleged conditions. "[T]o establish constructive knowledge, a plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, in the absence of evidence regarding time, the owner's insufficient prevention policy or failure to implement the policy." *Carlo-Blanco v. Inmobiliaria Comercial, Inc.*, 59 F. Supp. 3d 399, 403 (D.P.R. 2014) (citing *Ramos Rosado v. Wal–Mart,* 165 P.R.D. 510, 513–515 (2005)). Accepting Plaintiffs' testimony regarding the conditions' existence as true, there is little evidence regarding how long the handicap ramp was covered with soil. Such a dangerous condition could have arisen shortly before Candelaria-Fontanez's fall, especially given the inclement weather. Viewing the record in the light most favorable to Candelaria-Fontanez, the parking lot lacked illumination since Hurricane Maria knocked out Puerto Rico's electricity in September 2017. Further, unlike conditions such as spilled liquid, fallen debris, or loose soil that can arise in a matter of minutes or even seconds, paint fades slowly over time. *See, e.g.*, *Kahan v. Hilton Worldwide, Inc.*, 2015 WL 7777952, at *6 (D.P.R. Dec. 2, 2015) (explaining common issue in liquid cases is whether defendant had sufficient time to notice danger). Thus, though Candelaria-Fontanez did not

specifically allege the amount of time the visitor parking lot lacked illumination, or the handicap ramp had faded paint, the surrounding context and the nature of those conditions gives rise to the reasonable inference that they existed for at least long enough to make United States's constructive knowledge a triable issue of fact. Accordingly, whether the passage of time gave the United States constructive knowledge of the dark parking lot and the faded paint is a question of fact inappropriate for resolution on summary judgment.

Further, the record offers scant evidence that the United States had a policy of inspecting the visitor parking lot or that it implemented said policy. It is unclear whether the visitor parking lot was subject to the inspections that produced the Inspection Checklist and Duty Officer Report. By including these reports, the United States seemingly implied that it was. Dkt. 44 at 3. Candelaria-Fontanez contested this implied assertion. Dkt. 41-2 at 7. The United States then clarified its position by arguing Item 33 of the Inspection Checklist states, "[t]here are no unprotected openings in floors or immediate areas just outside the building. Repaired surfaces are flush with adjacent areas." Dkt. 41-5 at 3. That document further states that the "[i]nspection must include all areas of the institution." *Id.* at 2. However, the report also indicated that, "exitway lighting fixtures are continuously lighted" and "[e]mergency lighting units have been tested and are working properly." *Id.* at 2. ¶¶ 8–9. The United States never disputes that the parking lot through which Candelaria-Fontanez exited was dark. A reasonable factfinder could thus conclude that this inspection did not include the visitor parking lot. The United States's alleged failure to regularly inspect the visitor parking lot may render it liable to Candelaria-Fontanez under a constructive knowledge theory. *See Carlo-Blanco*, 59 F. Supp. 3d at 403. Thus, whether the United States had a policy requiring inspections of the visitor parking lot, and, if so, whether it followed that policy, are likewise triable issues of fact inappropriate for resolution on summary judgment.

Accordingly, whether the United States had constructive knowledge of the allegedly dangerous conditions cannot be resolved at this stage.

### iv.     *Known or Apparent Danger*

The United States may still obtain summary judgment if Candelaria-Fontanez knew of the allegedly dangerous conditions or they were apparent to him. *See Mas*, 784 F. Supp. at 948. It argues Candelaria-Fontanez was familiar with the MDC's visitor parking lot because he had walked through it several times, including the afternoon of February 15, 2018, when he arrived to visit his son. Dkt. 38 at 4; Dkt. 44 at 3. Candelaria-Fontanez concedes he had repeatedly visited the MDC to see his son. Dkt. 41-1 ¶¶ 1, 3. However, the United States admits MDC inmates were evacuated following Hurricane Maria and that Candelaria-Fontanez visited his son as soon as the inmates returned. Dkt. 37 ¶ 4. Further, Candelaria-Fontanez presented evidence that the MDC's visitor parking lot was so dark that he could not see anything on the night of February 15, 2018. Dkt. 41-12 at 6. The United States never disputes that the parking lot was dark that night.

The United States correctly noted *Mas* states there is no duty to protect a plaintiff from known or apparent dangers. Dkt. 38 at 3. However, it did not explain how *Mas* applies to this case. Though *Mas* thoroughly discusses whether the defendant knew of the spilt milk on a supermarket floor that constituted a dangerous condition in that case, it does not examine whether the plaintiff knew of this condition. *See Mas*, 784 F. Supp. at 948–950. Though Candelaria-Fontanez acknowledges visiting the MDC prior to his fall, he stated he hadn't visited the facility since his son had been evacuated after Hurricane Maria and he argues the parking lot was extremely dark when he fell. Dkt. 41-2 at 6. These facts distinguish Candelaria-Fontanez from the plaintiff in a case like *Sánchez-Parés v. Mapfre Puerto Rico*, 2021 WL 359985 (D.P.R. Feb. 2, 2021). There, the plaintiff slipped and fell on a grassy slope in a public park she had previously visited once or

twice a month. *Id.* at 2, 5. This court found the plaintiff was familiar with the park due to her regular visits and the slope was readily apparent to her because both sides agreed that she could clearly see it. *Id.* Here, though Candelaria-Fontanez may have known about the ramp from prior visits to the MDC, he had not been there in the preceding five months. Further, he presented evidence the slope was not readily apparent because the parking lot was "so dark you couldn't see anything." Dkt. 41-1 at 4 ¶ 10. Candelaria-Fontanez's familiarity with the MDC and his ability to see a soil-covered ramp in its darkened parking lot are questions of fact on which a reasonable factfinder could find in his favor. Accordingly, whether the ramp posed a known or apparent danger to him cannot be resolved at the summary judgment stage.

    *v.*    **Foreseeability**

Though the United States does not claim Candelaria-Fontanez's injuries were unforeseeable, I note that foreseeability is a component of breach in a negligence claim. *Vazquez-Filippetti*, 504 F.3d 43 at 49. Thus, to carry his burden as to breach, a plaintiff must show a defendant's acts or omissions created foreseeable risks. *Id.* Although "the requirement of foreseeability is not limited to requiring that the precise risk or consequences" suffered by the plaintiff be foreseen, those damages "must [still] fall within the general class of consequences that in a normal person's experience flow from such an act or omission." *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 88 (1st Cir. 2020) (citing *Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996), *aff'd*, 124 F.3d 47 (1st Cir. 1997)) (emphasis and further citations omitted). Falling, slipping, or tripping over items on the floor is a foreseeable consequence of a lack of light in a stairway. *Estremera v. Inmobiliaria Rac, Inc.*, 109 P.R.D. 852 (1980). Further, it is foreseeable that burned out exterior lights in a dangerous area or unstable

floors are likely to cause injury. *Vazquez-Filippetti*, 504 F.3d at 50. Accordingly, Candelaria-Fontanez's alleged fall would be a foreseeable consequence of the United States's alleged breach.

Thus, whether there were dangerous conditions in the MDC visitor parking lot, whether the United States should have known of these conditions, and whether they were known or readily apparent to Candelaria-Fontanez are questions of material fact that a factfinder must answer. Further, Candelaria-Fontanez's alleged fall would be a foreseeable consequence of the United States's alleged failure to modify the MDC parking lot or warn him of the danger. Accordingly, whether the United States breached its duty of care by failing to take these measures cannot be decided on summary judgment.

### B. Proximate Cause

Even if the United States breached its duty, it argues it is entitled to summary judgment because Candelaria-Fontanez cannot establish that its allegedly negligent conduct caused his injuries. Dkt. 37 at 4 "Notwithstanding proof of both duty and breach, a plaintiff also must offer competent evidence of causation . . . ." *Cortés-Irizarry v. Corporación Insular de Seguros*, 111 F.3d 184, 190 (1st Cir. 1997). At summary judgment, this requires "demonstrating there is evidence sufficient to create a material factual dispute on the issue of causation." *Gonzalez-Caban v. JR Seafood Inc.*, 48 F.4th 10, 14–15 (1st Cir. 2022) (citing *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020)). "To satisfy the proximate causation element, a plaintiff must demonstrate that '(1) the defendant's breach of its duty of care [is] the actual cause of the injury suffered by the plaintiff, and (2) the injury suffered [was] reasonably foreseeable to the defendant.'" *Id.* (quoting *Baum-Holland*, 964 F.3d at 88) (alterations in original).

### *i.      Actual Cause*

**Failure to Maintain**

Candelaria-Fontanez must show that evidence in the record is sufficient for a reasonable factfinder to conclude that, more likely than not, his injuries are due to the United States's failure to properly maintain its premises and/or its failure to warn him of the allegedly dangerous conditions. *Gonzalez-Caban*, 48 F.4th at 16 (citing *Baum-Holland*, 964 F.3d at 93). "Judgment about whether an inference is reasonable is different from a 'judge superimpos[ing] his own ideas of probability and likelihood (no matter how reasonable those ideas may be).'" *Ricci v. Alt. Energy, Inc.*, 211 F.3d 157, 161 (1st Cir. 2000) (alteration in original) (quoting *Greenburg*, 835 F.2d at 936).

First, the United States argues it is entitled to summary judgment because the MDC's Lieutenant Log and Duty Officer Report do not show any incident on the day of Candelaria-Fontanez's alleged fall. Dkt. 38 at 4. Candelaria-Fontanez cites deposition testimony and his February 20, 2018 administrative complaint to support his allegation that he fell. Dkt. 41-2 at 7. The occurrence of the incident at issue in this litigation is a question of material fact that must be decided at trial. Viewing the record in the light most favorable to Candelaria-Fontanez, a reasonable factfinder could find that he fell at the MDC. Accordingly, the United States's evidence does not entitle it summary judgment.

The United States next argues Candelaria-Fontanez caused his own injuries by negligently running toward his car without looking at the ground. Dkt. 38 at 4. In Puerto Rico, a plaintiff's conduct may entitle a defendant to summary judgment where the plaintiff "acknowledged and voluntarily assumed the risk." *Ayala Martínez*, 2022 WL 1289356, at *3 (citing *Viñas v. Pueblo Supermarket*, 86 P.R.D. 33, 40 (1962)). This differs from comparative negligence, in which the

factfinder is tasked with determining whether the plaintiff's negligence caused his injuries or whether both parties' exhibited negligence causing the injury. *Id.* at 4. Upon making such a finding, the factfinder awards damages accordingly. *Id.* Because comparative negligence mitigates damages to the extent the factfinder holds a defendant liable, "motions for summary judgment [under this theory] cannot be granted on the argument that plaintiff caused his own fall." *Velázquez v. Puerto Rico Ports Authority*, 2009 WL 10717754, at *4 (D.P.R. Feb. 18, 2009).

The United States seeks summary judgment under the assumption of risk theory. Dkt. 44 at 4. In both *Ayala Martínez* and *Velázquez*, this court found that disputed facts as to the plaintiffs' conduct precluded summary judgment on that theory. 2022 WL 1289356, at *4 (ultimately granting summary judgment because plaintiff failed to establish dangerous condition); 2009 WL 10717754, at *4, *6 (recommending summary judgment be denied). The same finding is warranted here. *Ayala Martínez* is particularly relevant. There, a plaintiff alleged she slipped and fell in a parking lot and the defendant sought summary judgment arguing the plaintiff was running when she fell. *Ayala Martínez,* 2022 WL 1289356, at *4. However, this court did not grant summary judgment on that ground after finding that the plaintiff denied running in her deposition testimony. *Id.* In *Velázquez*, a plaintiff alleged he slipped and fell on water under a urinal. 2009 WL 10717754, at *3. The defendant argued some urinals did not have water under them and the plaintiff should have used one of those. *Id.* Finding that the plaintiff's deposition testimony regarding the availability of such a urinal was "not exactly a model of consistency," this court nevertheless held a jury should decide whether such a facility was available. *Id.* Here, Candelaria-Fontanez testified he "started running or walking fast" immediately before he fell. Dkt. 41-3 at 2 ll. 6–14. His administrative claim stated he was running. Dkt. 37-2 at 3. As in *Ayala Martínez* and *Velázquez*, I leave it for trial to resolve these inconsistencies in the record. Further, this court previously found

that whether a plaintiff should have been more careful while walking in the rain is a question for the jury. *See Kahan*, 2015 WL 7777952, at *7. I agree that this question must be decided at trial.

I note that the United States cites a few irrelevant cases to support its summary judgment argument. First, it highlights two comparative negligence cases, *Patterson v. U.S.*, 599 F. Supp. 2d 34 (D. Me. 2009) and *Furey v. U.S.*, 458 F. Supp. 2d 48 (N.D.N.Y. 2006). Dkt. 44 at 5. After trials on the merits, both decisions found the plaintiffs' behavior in icy conditions rendered them at least partially responsible for their injuries. *Patterson*, 599 F. Supp. 2d 34; *Furey*, 458 F. Supp. 2d 48. Given the instant case's different facts, different applicable law, and different procedural posture, neither ruling supports the government's contention that I can make a similar determination at this stage. The government also cites an admiralty case, *Chapman v. Bizet Shipping, S.A.*, 936 F. Supp. 982 (S.D. GA 1996), in which the court found a stevedore trainee could have prevented his fall in a dark area. *Id.* at 986. On summary judgement, the *Chapman* court found the plaintiff had access to a flashlight and could have asked his crewmate to turn on the lights. *Id.* Here, no evidence establishes that either option was available to Candelaria-Fontanez. "Moreover, '[t]he duty to provide adequate lighting is imposed by law on the stevedore.'" *Id.* (citing *Landsem v. Isuzu Motors, Ltd.*, 534 F. Supp. 448, 451 (D. Ore. 1982), *aff'd*, 711 F.2d 1064 (9th Cir.1983)) (alteration in original). Candelaria-Fontanez had no such duty. Accordingly, the United States is not entitled to summary judgment on an assumption-of-risk theory.

### *Failure to Warn*

The United States never explicitly addresses Candelaria-Fontanez's failure-to-warn allegation. At best, it impliedly argues it had no duty to warn him because Puerto Ricans understood the danger of the post-Maria blackout, Dkt. 44 at 4–5, and his behavior renders its

failure to warn inconsequential. Dkt. 37 at 4. The first argument misapprehends the court's role on summary judgment. As the government states, the "trier of facts can make [the] proximate cause determination 'based on common experience.'" Dkt. 44 at 4–5 (citing *Blomquist*, 925 F.3d at 550). Accordingly, it is an issue for trial, not summary judgment, whether Candelaria-Fontanez understood the danger of walking through a dark parking lot given Puerto Rico's monthslong post-Maria blackout. A factfinder could reasonably conclude that MDC employees likewise understood the danger and had a duty to warn visitors crossing the newly reopened facility's darkened parking lot. Thus, this argument does not entitle the United States to summary judgment.

I turn next to the government's contention regarding Candelaria-Fontanez's behavior. A defendant's failure to warn of a dangerous condition will not lead to liability if the warning would not have changed the plaintiff's conduct. *See Blomquist*, 925 F.3d 541, 550 (finding hotel's failure to warn wedding guests regarding dangers of pouring water on dancefloor to create improvised "slip-and-slide" did not lead to liability where hotel warned groom of the danger and he "arrogantly disregarded" the warning by pouring soap on the floor to increase its slipperiness). Here, the United States has presented no evidence that it warned anyone, much less Candelaria-Fontanez, Monserrate, or their grandchild, of the ramp or that they disregarded such a warning. It relies only his testimony that he was late taking his grandson home. Dkt. 37 at 4. A reasonable factfinder could find that, if warned, Candelaria-Fontanez would have proceeded more carefully through the parking lot despite his tardiness and thus avoided his fall. Accordingly, it could find the United States's failure to warn Candelaria-Fontanez of the ramp caused his fall.

### ii.    *Reasonably Foreseeable*

I note that "Puerto Rico law makes the foreseeability of a plaintiff's injury central to the proximate cause inquiry." *Martinez-Suarez v. Mansiones de Garden Hills Apartments*, 556 F.

Supp. 3d 1, 24 (D.P.R. 2021), *appeal dismissed*, 2022 WL 1087021 (1st Cir. Jan. 6, 2022) (quoting 31 L.P.R.A. § 3022). However, the United States only argues it did not proximately cause Candelaria-Fontanez's fall because it was due to his own negligence. Dkt. 37 at 4. Having determined genuine disputes of material fact with respect to that claim, I need not go further. However, as discussed above, falling is a foreseeable consequence of a lack of light in areas with uneven surfaces. The parking lot's lights, apparently illuminated on previous visits, create the reasonable inference that the United States foresaw such danger. See *Kahan*, 2015 WL 7777952, at *6 (presence of anti-skid strips on adjacent tile created reasonable inference that defendant foresaw someone could slip on tile). Accordingly, triable issues of fact remain as to whether United States breached its duty to act with reasonable care and whether that failure proximately caused Candelaria-Fontanez's fall.

## CONCLUSION

For the foregoing reasons, the United States's motion for summary judgment as to the claims against it is **GRANTED IN PART and DENIED IN PART**.

With respect to Monserrate and the conjugal partnership's claims, it is **GRANTED**. Their claims are **DISMISSED with prejudice.**

Regarding Candelaria-Fontanez's claims, the United States's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of April, 2023.

S/ Bruce J. McGiverin
BRUCE J. MCGIVERIN
United States Magistrate Judge